## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                        )
PETER GEORGE ODHIAMBO,                  )
                                        )
              Plaintiff,                )
                                        )
       v.                               )        Civil Action No. 12-0441 (ABJ)
                                        )
REPUBLIC OF KENYA, et al.,              )
                                        )
              Defendants.               )
                                        )
```

## MEMORANDUM OPINION

On March 21, 2012, plaintiff Peter Odhiambo, a refugee from Kenya, brought this suit against defendants – the Republic of Kenya, the Kenya Ministry of Finance, the Kenya Revenue Authority ("KRA"), and the current and former KRA Commissioner Generals, John Njiraini and Michael Waweru, in their official capacities. Compl. [Dkt. # 1] at 1. He amended his complaint on July 9, 2012. Am. Compl. [Dkt. # 13]. Odhiambo alleged two breach of contract claims arising from the KRA's offer to pay a reward in exchange for information about unpaid taxes due to the Republic of Kenya. Am. Compl. ¶¶ 46–55. On March 13, 2013, this Court dismissed the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the grounds that defendants were entitled to immunity under the Foreign Sovereign Immunity Act ("FSIA"). Order (Mar. 13, 2013) [Dkt. # 20]; *see also Odhiambo v. Republic of Kenya*, No. 12-0441, 2013 WL 953432, at *1 (D.D.C. Mar. 13, 2013).

On April 10, 2013, Odhiambo filed a Federal Rule of Civil Procedure 59(e) motion asking the Court to alter or amend its judgment so that he could seek leave to file a second amended complaint. Pl.'s Mot. to Alter or Amend J. [Dkt. # 22] at 1. Subsequently, on May 19,

2013, Odhiambo went ahead and filed his motion for leave to file a second amended complaint under Federal Rule of Civil Procedure 15(a)(2).  Pl.'s Mot. for Leave to File 2d Am. Compl. [Dkt. # 30].  In the proposed second amended complaint, he consolidates and re-asserts his breach of contract claims as Count I and adds eight new claims (Counts II–IX).  *See* Pl.'s Mem. in Support of Mot. for Leave to File 2d Am. Compl. [Dkt. # 30-1] ("Pl.'s Rule 15(a)(2) Mem.") at 1.  The Court will deny both motions because Odhiambo has not met the stringent requirements of Rule 59(e), and his proposed second amended complaint is barred by sovereign immunity.  While Odhiambo has added facts and multiplied counts, the gravamen of his complaint remains the same:  that the government of Kenya both made and breached a promise to Odhiambo in Kenya.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that "the Court should freely give leave [to amend a pleading] when justice so requires."  However, "once a final judgment has been entered, a court cannot permit an amendment unless the plaintiff first satisfies Rule 59(e)'s more stringent standard for setting aside that judgment."  *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004) (internal quotation marks omitted).

"Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances."  *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001), citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998).  Specifically, "'[a] Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice.'"  *Ciralsky*, 355 F.3d at 671, quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

"Rule 59(e) . . . 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'"  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008), quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995); *see also Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) ("In this Circuit, it is well-established that motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.") (internal quotation marks and citations omitted).

## ANALYSIS

**I.    Rule 59(e) Motion to Amend or Alter Judgment**

Odhiambo alleges that the Court should alter its March 2013 decision "[b]ased upon: the Plaintiff's ability to proffer new evidence that supports new claims; the potential manifest injustice that could result to Plaintiff (on statute of limitation grounds) if he is precluded from bringing those additional claims in any forum; and based, further, on the clear errors of fact and law in applying the FSIA jurisdictional inquiry."  Pl.'s Mem. in Support of Mot. to Alter or Amend J. [Dkt. # 22-1] ("Pl.'s Rule 59(e) Mem.") at 27.  But Odhiambo has failed to proffer new evidence, to demonstrate that the Court's ruling was legally erroneous, or to show that denying his motion to alter the judgment would result in manifest injustice.

A. <u>The evidence that Odhiambo proffers in his Rule 59(e) motion is not "new"</u>

Odhiambo asserts that the Court should amend its judgment based on "new evidence." Pl.'s Rule 59(e) Mem. at 3–7.  Contrary to Odhiambo's characterization, none of the evidence that he presents is "new."  Odhiambo attaches three affidavits to his Rule 59(e) motion.  The first affidavit – signed by Odhiambo – post-dates the Court's March 2013 decision but it raises no facts previously unknown to him and mostly repeats the information in his first amended complaint.  Odhiambo Aff., Ex. A to Pl.'s Rule 59(e) Mot. [Dkt. # 22-2] ("Pl.'s Aff.").  The next two affidavits were signed in February and August 2012 – well before the Court issued its March 2013 decision.  Kiai Aff., Ex. B to Pl.'s Rule 59(e) Mot. [Dkt. # 22-3]; Opon Aff., Ex. C to Pl.'s Rule 59(e) Mot. [Dkt. # 22-4].  Indeed, the affidavit from David Opon, a friend of Odhiambo, was signed more than a month before Odhiambo filed his original complaint.  Opon Aff. at 2.  The remaining documents that Odhiambo offers are also not new; they include documentation of payments and correspondence dated well-before the filing of his original complaint.  Exs. D and E to Pl.'s Rule 59(e) Mot. [Dkt. # 22-5, 22-6].

In his reply memorandum, Odhiambo also points to "additional new evidence" to support his motion for reconsideration.[1]  Pl.'s Reply in Support of Mot. to Alter or Amend J. [Dkt. # 29] ("Pl.'s Reply") at 2.  This "new evidence" relates to a statement contained in defendants' original motion to dismiss that under the reward contract, whistleblowers could receive a maximum of 2.1 million Kenyan shillings.  *Id.* at 2–3.  Odhiambo alleges that this information is "new" because it was not available to him prior to the filing of his first amended complaint.  *Id.* at 3 n.1.

---

[1]    The Court notes that "[c]ourts 'highly disfavor[ ] parties creating new arguments at the reply stage that were not fully briefed during the litigation.'"  *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 103 (D.D.C. 2006) (alterations in original) (citations omitted).  This is because "a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues."  *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998).

This allegation is directly contradicted by Odhiambo's proposed second amended complaint, which alleges that he was informed about the cap on the reward in July 2006 by KRA Commissioner Nduati.  *See* Proposed 2d Am. Compl., Ex. A to Pl.'s Reply [Dkt. # 29-1] & Ex. A to Pl.'s Rule 15(a)(2) Mot. [Dkt. # 30-2] ¶¶ 43–44.[2]

Even if Odhiambo did learn about the reward ceiling for the first time when he received defendants' motion to dismiss, the test for Rule 59(e) is not whether the evidence was available before the filing of plaintiff's amended complaint but whether it was available "prior to the entry of judgment.'"  *Exxon Shipping*, 554 U.S. at 486 n.5.  Under that standard, this evidence is not new because defendants' motion was filed almost eight months before the Court's decision, and Odhiambo had ample opportunity to address it in his opposition to the motion to dismiss.

B.  The additional evidence that Odhiambo proffers does not support amending the prior judgment

Moreover, the evidence proffered in Odhiambo's Rule 59(e) pleadings does not alter the Court's decision that Odhiambo's case did not fall within any of the three clauses of the commercial activity exception of the FSIA, 28 U.S.C. § 1605(a)(2).  *See Odhiambo*, 2013 WL 953432, at *5–14.  In his affidavit, Odhiambo alleges that the KRA paid him in September 2006 while he was in Tanzania, and again in January 2009 while he was in the United States.  Pl.'s Aff. ¶¶ 24–25, 33.  According to Odhiambo, these payments "evidenc[ed] both an implied modification of the contract that took place in this country, as well as an intent to make reward payments to Plaintiff here, which alone satisfied" all three clauses of the commercial activity exception.  Pl.'s Rule 59(e) Mem. at 23–24; *see also id.* at 21, 25.

Odhiambo's affidavit indicates the exact opposite.  It shows that although the KRA officials knew that Odhiambo was no longer in Kenya, they wrote the checks for both of these

---

2       The proposed second amended complaints attached as exhibits to both Odhiambo's reply memorandum in support of his Rule 59(e) motion and his Rule 15(a)(2) motion are identical.

payments out to Odhiambo in Kenyan Shillings in Kenya.  Pl.'s Aff. ¶¶ 24–25, 33.  Since Odhiambo was no longer in Kenya, he had to rely on a Mr. Weru – a former colleague who had agreed to serve as an intermediary between Odhiambo and the KRA – to pick up the checks in Kenya and forward him the money.  *Id.*  Therefore, this additional information supports the Court's conclusion that there is no evidence that defendants implicitly modified the contract to make the reward payable in the United States.  *See Odhiambo*, 2013 WL 953432, at *13–14.

In an attempt to avoid this conclusion, Odhiambo argues that Mr. Weru's actions can be attributed to Kenya for jurisdictional purposes because he was an agent of Kenya.  Pl.'s Reply at 16–18.  To establish an agency relationship, the plaintiff must demonstrate three elements:  "(1) the principal must manifest a desire for the agent to act on the principal's behalf; (2) the agent must consent to act on the principal's behalf; and (3) the principal must have the right to exercise control over the agent with respect to matters entrusted to the agent."  *Kaiser Grp. Int'l, Inc. v. World Bank*, 420 Fed. App'x. 2, 2 (D.C. Cir. 2011), citing *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848–49 (D.C. Cir. 2000).  Odhiambo argues that Mr. Weru was an agent of Kenya because the KRA recommended that he serve as an intermediary between the KRA and Odhiambo to protect Odhiambo's identity.  Pl.'s Reply at 16–17; Pl.'s Aff. ¶ 7.  This argument does not meet the standard for an agency relationship because it does not allege that the KRA manifested a desire for Mr. Weru to act on its behalf, that Mr. Weru consented to act on the KRA's behalf, or that the KRA had the right to exercise control over Mr. Weru with respect to the relationship with Odhiambo.

Rather, according to Odhiambo's own affidavit, Mr. Weru was simply a conduit between the two parties:  he passed along tax information from Odhiambo to the KRA and delivered the KRA's checks to Odhiambo.  Pl.'s Aff. ¶ 7.  Additionally, Odhiambo's references to Mr. Weru

as "my intermediary" and "Plaintiff's intermediary" suggest that in fact, Mr. Weru was acting on Odhiambo's behalf, to ensure that Odhiambo received his reward payments, and not as an agent of Kenya.  *See* Pl.'s Aff. ¶ 25; *see also* Proposed 2d Am. Compl. ¶ 68.  Therefore, Odhiambo's argument that the Court should re-open these proceedings based on new evidence fails because the evidence he proffers is not new and the evidence does not cure the jurisdictional issues addressed in Court's March 2013 decision.[3]  *Natural Res. Def. Council, Inc. v. EPA*, 705 F. Supp. 698, 702 (D.D.C. 1989) ("Nor may the [Rule 59(e)] motion present evidence which was available but not offered at the original motion or trial."), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989).

C.  <u>Odhiambo has not shown that the Court's March 2013 decision was legally erroneous</u>

Odhiambo also alleges that the Court must alter its March 2013 decision to correct a clear legal error in its analysis of the commercial activity exception.  With respect to clause one of the commercial activity exception, he contends that the Court's application of *Kirkham v. Société Air Fr.*, 429 F.3d 288 (D.C. Cir. 2005) was legally erroneous because, in that case, the D.C. Circuit misread the Supreme Court's decision in *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) and failed

---

3       The other information in Odhiambo's affidavit, such as the flight of two other whistle-blowers in the Charterhouse "tax fraud" from Kenya, is not part of Odhiambo's complaint and not relevant to the Court's sovereign immunity analysis.  Similarly, the new details about Odhiambo's dealings with Kenyan officials after his relocation to this country does not affect the Court's analysis because his action is not "based upon" those interactions, and they do not constitute a "direct effect" in this country.  *See Odhiambo*, 2013 WL 953432, at *10–11, 13–14.

to apply the text of the statute.  Pl.'s Rule 59(e) Mem. at 16–19.[4]  But the Court is bound by the

precedent in this circuit, and if Odhiambo believes that D.C. Circuit law is incorrect, his remedy

rests in an appeal to the circuit court.[5,6]

Odhiambo also argues that the Court's analyses of clauses two and three were erroneous.

With respect to clause two, Odhiambo contends that the Court "misconstrue[d] Plaintiff's

---

4      Specifically, Odhiambo alleges that in its clause one analysis, the Court failed to consider "whether any of the commercial activity on which Plaintiff's action was based had 'substantial contact with the United States,'" which according to Odhiambo is required by the FSIA, 28 U.S.C. § 1603(e).  Pl.'s Rule 59(e) Mem. at 12.  First, Odhiambo did not raise this issue during his prior pleadings, and a losing party cannot use a Rule 59 motion "to request the trial judge to reopen proceedings in order to consider a new defensive theory which could have been raised during the original proceedings."  *See Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).  Second, the cases that Odhiambo cites for his "substantial contacts" argument address whether a defendant has established "minimum contacts" with a particular forum such that the imposition of personal jurisdiction in that forum satisfies due process.  *See* Pl.'s Rule 59(e) Mem. at 19–20; Pl.'s Reply at 10–12.  But this circuit has stated that the "substantial contact requirement is stricter than that suggested by a minimum contacts due process inquiry."  *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988).

Third, even if the Court were inclined to look at the authority that Odhiambo cites to support his "substantial contact" argument, those cases are distinguishable.  For example, in *McGee v. International Life Insurance Co.*, the Court found that the contract had substantial connection to California because "[t]he contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died."  355 U.S. 220, 223 (1957).  But here, the Court has already explained that all of the aspects of the reward contract – the advertising, offer, acceptance, and payment – occurred in Kenya.  *Odhiambo*, 2013 WL 953432, at *9–11.  The only connection to the United States is Odhiambo's presence here, and that is insufficient to establish jurisdiction.  *Id.* at *10–11.

5      Odhiambo also alleges that "the Supreme Court in *Permanent Mission of India to United Nations v. City of New York* held that a court, interpreting the FSIA, must 'begin, as always, with the text of the statute.'  551 U.S. 193, 197 (2007).  *Kirkham* did not, and must be deemed implicitly overruled."  Pl.'s Reply at 12.  The Court disagrees because *Kirkham* began with the text of the statute, 429 F.3d at 291–92, and then applied Supreme Court case law interpreting it, *id.* at 292–93.

6      Odhiambo also argues that defendants' reliance on the Eleventh Circuit's analysis of clause one in *Guevara v. Republic of Peru*, 608 F.3d 1297 (11th Cir. 2010) is improper because that case "failed to apply the 'substantial contact' standard."  Pl.'s Reply at 15 n.14.  On the contrary, the Court finds that *Guevara* supports the D.C. Circuit's decision in *Kirkham* because it demonstrates that other circuits have applied clause one without explicitly discussing the "substantial contact" language.

contention, which at a minimum has been that Kenya's contract breach occurred in the U.S. by its omissions to pay the reward here where it knew Plaintiff was located." Pl.'s Rule 59(e) Mem. at 23.  He also submits that clause three gives the Court jurisdiction over his case because:  (1) Kenya had a practice of paying plaintiff based on his location; and (2) it modified its contract to provide for payment in the United States.  *Id.* at 24–27.  The Court has already addressed and rejected these arguments in its previous opinion and in this Memorandum Opinion and Order. *See Odhiambo*, 2013 WL 953432, at *13–14; *see also* discussion *supra* pp. 5–7.  And Odhiambo cannot use Rule 59(e) to relitigate issues already decided by the Court.  *Exxon Shipping Co.*, 554 U.S. at 486 n.5.

D.  Denial of the Rule 59(e) motion would not result in manifest injustice

Odhiambo asks the Court to amend its March 2013 decision to allow him to seek leave to file a second amended complaint asserting new claims of detrimental reliance, constructive fraud, and unjust enrichment, among others.  Pl.'s Rule 59(e) Mem. at 1, 10; *see also* Proposed 2d Am. Compl. ¶¶ 110–130, 138–143.  He argues that the Court's denial of his Rule 59(e) motion could result in "potential manifest injustice" because he could be precluded from bringing those additional claims in any forum due to statute of limitations concerns.  *Id.* at 10–11.

Odhiambo primarily relies on *Ciralsky*, 355 F.3d at 661, to support his position.[7]   In *Ciralsky*, the D.C. Circuit considered an appeal of the district court's order dismissing the complaint and the action without prejudice and denying leave to alter or amend the judgment. The district court had first dismissed the plaintiff's complaint under Federal Rule of Civil Procedure 8(a)(2) for failure to provide a short and plain statement of the claim and gave the plaintiff twenty-one days to file an amended complaint that complied with Rule 8(a)(2).  *Id.* at 664–65.  The plaintiff timely filed a first amended complaint but the court concluded that the amended complaint still failed to comply with Rule 8(a)(2) and dismissed the amended complaint and the action without prejudice.  *Id.* at 665.  Subsequently, the plaintiff moved to amend or alter the judgment under Rule 59(e) and for leave to file a second amended complaint under Rule 15(a) on the grounds that he "may be unfairly prejudiced if he is not allowed to file a second amended complaint as the statute of limitations may be deemed to have run on some of his claims if he is not allowed to proceed."  *Id.* (internal quotation marks and citation omitted). The district court denied the Rule 59(e) motion finding no manifest injustice because the plaintiff had offered no detail, supporting citations, or substantiation for his concerns about the statute of limitations.  *Id.*  The court also concluded that "'[m]anifest injustice does not exist where, as here, a party could have easily avoided the outcome, but instead elected not to act until after a

---

7      Although the Court's order dismissing this case did not explicitly state that the dismissal was "with prejudice," its use of the phrase "[t]his is a final appealable order" indicated that "the order had terminated the action."  *See Ciralsky*, 355 F.3d at 667.  Odhiambo argues that "the Court's silence on this point signifies that the effect of the Court's dismissal was in fact to dismiss the action 'without prejudice'" in accordance with Federal Rule of Civil Procedure 41(a)(2). Pl.'s Rule 59(e) Mem. at 2 n.1.  This argument fails on its face.  Rule 41(a)(2) relates to when "an action may be dismissed at the plaintiff's request."  That rule does not apply here because this case was not dismissed "at the plaintiff's request"; it was dismissed over plaintiff's objection.

final order had been entered.'"  *Id.* (alteration in original) (citation omitted).  The court then denied the Rule 15(a) motion as moot.  *Id.*

On appeal, the D.C. Circuit held that the district court did not abuse its discretion in denying the plaintiff's Rule 59(e) motion.  *Id.* at 673.   The circuit court was "nonetheless troubled by the fact that an affirmance of [the district court's] Rule 59(e) disposition would terminate this lawsuit, not because of the invalidity of [the plaintiff's] claims, but because the plaintiff's attorneys failed to satisfy Rule 8(a) or to advise the court of the consequences of a dismissal."  *Id.* at 673–74.  The circuit court then remanded the case to the district court to determine "whether, in light of the limitations problem, the plaintiff should be given another opportunity to amend his complaint."  *Id.* at 664, 674.

But the issues that troubled the court in *Ciralsky* are not present in this case.  The decision in *Ciralsky* was based on the "'jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities.'"   355 F.3d at 674 (alteration omitted) (citation omitted).   A denial of Odhiambo's Rule 59(e) motion would not undermine that preference because the Court did not dismiss Odhiambo's case based on a procedural or formal defect.  The Court concluded that it cannot adjudicate Odhiambo's case on its merits because it does not have subject matter jurisdiction.  Moreover, unlike the plaintiff in *Ciralsky*, Odhiambo is not seeking to amend his complaint to avoid statute of limitations concerns on the claims that this Court previously dismissed.  He is concerned with the statute of limitations on new claims that were available to him before he filed his original complaint but that he failed to previously assert.  *See* Pl.'s Rule 59(e) Mem. at 10.  He has provided no justification for failing to bring these claims before the Court's March 2013 decision, and it is not manifestly unjust to deny him the chance to re-open the case to assert new claims that he could have brought at the outset.  *See*

*Niedermeier*, 153 F. Supp. 2d at 28 ("It is well established that plaintiff cannot resuscitate her case post-dismissal by alleging facts or legal theories that were available to her at the inception of her case.").

Since Odhiambo has failed to proffer "new evidence" that was previously unavailable to him, to demonstrate that the March 2013 decision was legally erroneous, or to show that the decision must be amended to prevent manifest injustice, the Court will deny his Rule 59(e) Motion to Alter or Amend the Judgment.

## II.   Rule 15(a)(2) Motion For Leave to File A Second Amended Complaint

### A.   Odhiambo's motion to amend his complaint fails because he has not met the Rule 59(e) standard for setting aside the prior judgment

"[O]nce a final judgment has been entered, a court cannot permit an amendment unless the plaintiff 'first satisfies Rule 59(e)'s more stringent standard' for setting aside that judgment." *Ciralsky*, 355 F.3d at 673, quoting *Firestone*, 76 F.3d at 1208 (alteration omitted).  Since Odhiambo has failed to meet "Rule 59(e)'s more stringent standard," his motion for leave to file a second amended complaint must be denied on that basis alone.

### B.   Odhiambo's motion to amend his complaint also fails because the proposed second amended complaint is barred by sovereign immunity and is therefore futile

Even if the Court were to use the Rule 15(a)(2) standard for amending a pleading before a final judgment has been entered, Odhiambo's motion would still fail.  When evaluating whether to grant a party's motion for leave to amend its pleading after a responsive pleading has been served, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint.  *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Court may deny leave to amend based on futility "if the proposed claim would not survive a motion to dismiss."  *Rumber v. District of Columbia*, 598 F.

Supp. 2d 97, 102 (D.D.C. 2009), citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C.Cir.1996); *see also Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2005) ("While a court is instructed by the Federal Rules of Civil Procedure to grant leave to amend a complaint 'freely,' it need not do so where the only result would be to waste time and judicial resources. Such is the case where the Court determines, in advance, that the claim that a plaintiff plans to add to his or her complaint must fail, as a matter of law. . . .").

The proposed second amended complaint relies on the same jurisdictional grounds as the first amended complaint that was previously dismissed.  Odhiambo contends that the Court has jurisdiction over defendants based on the first two exceptions of the FSIA:  the waiver exception, 28 U.S.C. § 1605(a)(1); and the commercial activity exception, *id.* § 1605(a)(2).  Proposed 2d Am. Compl. ¶ 6.  Because Odhiambo's complaint does not contain allegations that satisfy any of these exceptions, defendants are entitled to sovereign immunity, and the proposed second amended complaint is futile because it would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

1. *The proposed second amended complaint does not allege that defendants waived their sovereign immunity*

With respect to the waiver exception, Odhiambo has again failed to allege that defendants' actions fall within one of the three accepted examples of implied waiver:  he does not assert that defendants agreed to arbitration in the United States; that the reward scheme stated that U.S. law governed the offer; or that defendants failed to assert the defense of sovereign immunity in their responsive pleadings.  *See Odhiambo*, 2013 WL 953432, at *5 (discussing the standard for waiver under the FSIA).  To support Odhiambo's implied waiver argument, the new complaint alleges that in 2007, after Odhiambo's counsel gave notice of intended legal action, the KRA sent word that "if [Odhiambo] wished to continue receiving reward payments, he

should refrain from legal demands."  Proposed 2d Am. Comp. ¶ 56.  This allegation cannot support a finding of implied waiver because it does not express any indication that defendants were amenable to suit in the United States.  *See Princz v. Fed. Republic of Ger.*, 26 F.3d 1166, 1174 (D.C. Cir. 1994) (stating that a finding of "an implied waiver depends upon the foreign government's having at some point indicated its amenability to suit.").  To the contrary, it shows that they did not want Odhiambo to start legal proceedings here.  Similarly, Odhiambo's correspondence with defendants in 2011 and 2012 about his intent to sue if he did not receive the payment he was allegedly owed does not demonstrate an implied waiver of immunity because in that correspondence, defendants still counseled him not to initiate legal action and did not indicate their amenability to suit.  *See* Proposed 2d Am. Compl. ¶¶ 73–74.  Therefore, the proposed second amended complaint fails to plead facts indicating that defendants have waived their sovereign immunity.

> 2.  *The allegations in the proposed second amended complaint do not fall within the "commercial activity" exception*

Under the "commercial activity" exception,

> A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case
> . . .
> in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . .

28 U.S.C. § 1605(a)(2).  As was the case with the claims that were already dismissed, Odhiambo's new claims do not fall within any of the three commercial activity exceptions listed in section 1605(a)(2).  Assuming that the offer of a reward was a "commercial activity," it took place in Kenya, not the United States, so the first clause is inapplicable.  Odhiambo's claims are

not "based upon" any act performed in the United States, so the second clause is inapplicable. And Odhiambo's claims are not "based upon" any act that caused a "direct effect" in the United Sates, so the third clause is inapplicable as well.

### i.  Count I:  Breach of contract

Count I of the proposed second amended complaint attempts to resuscitate the breach of contract claims that were previously dismissed by this Court.  Proposed 2d Am. Compl. ¶¶ 79–92.  Once again, Odhiambo alleges that defendants breached the reward contract by failing to pay the reward and by disclosing his identity.  *Id.* ¶¶ 81–86, 89.  To fit the contract claim within a FSIA exception, the proposed second amended complaint includes the following additional allegations:

- The reward scheme was advertised on the KRA website, which was "disseminated in Washington, D.C. and elsewhere." *Id.* ¶ 10.

- KRA's print advertisement promoting the reward contract was "disseminated in U.S. commerce." *Id.* ¶ 11.

- The KRA recommended that Mr. Weru – Odhiambo's former colleague – serve as an intermediary between the KRA and Odhiambo to protect Odhiambo's identity. *Id.* ¶¶ 15–16.  While Odhiambo was in the United States, the KRA made two payments to him in Kenyan shillings though Mr. Weru. *Id.* ¶¶ 61, 68.

- Odhiambo met with the Kenyan Prime Minister's Chief of Staff in the United States in June 2008 and gave him copies of the documents he previously provided to the KRA as well as a "detailed written summary" of that information. *Id.* ¶ 64.

- The KRA failed to "freeze, seize, place a lien upon, or otherwise recover illicit money transfers by Charterhouse to the United States . . . which form part of the basis upon which Plaintiff was entitled to and sought his contractual reward." *Id.* ¶ 35.

These allegations are insufficient to bring Odhiambo's breach of contract claim within the commercial activity exception.  First, the fact that the KRA's website was accessible in the United States or that the print ad was "disseminated in U.S. commerce" does not satisfy clause

one or two of the commercial activity exception.  *See* Pl.'s Opp. to Mot. to Dismiss [Dkt. # 17] at 14 (alleging that the KRA advertisement was "placed on commercial newspapers that market their services on a worldwide basis.").  In *Guevara*, the Eleventh Circuit held that a Peruvian official's explanation of the mechanics of a Peruvian reward offer to an individual in the United States did not constitute an act in connection with the reward offer.  608 F.3d at 1308–09.  The court explained that a holding to the contrary would mean that "any statement [the Peruvian official] may have made about the reward to anyone else in the United States would have operated to waive Peru's immunity from suit.  We are reluctant to find a waiver based on such *de minimis* evidence." *Id.*  This analysis also applies to this case.

Odhiambo alleges that the reward offer was advertised in Kenya's print and online newspapers and the KRA's website.  Proposed 2d Am. Compl. ¶ 9.  As in *Guevara*, this Court is reluctant to find that clauses one and two are met just because these Kenyan advertisements were also available in the United States.  Such a finding would subject any foreign state whose website or advertisements are available in the United States to suit here.  Further, the mere availability of the advertisements in the United States does not meet the requirements of clause three because Odhiambo has not alleged that they had a "direct effect" here.

To the extent Odhiambo relies on his relocation to the United States as a "direct effect," that argument would fail because his relocation was not "an immediate consequence" of the advertisements.  *See Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (instructing that for FSIA purposes, a direct effect "follows as an immediate consequence of the defendant's . . . activity.") (alteration omitted) (internal quotation marks omitted).  Rather, there were many "intervening events–including his own decision to disclose his identity as an informant to a major newspaper and the newspaper's publication of that information." *See Odhiambo*, 2013

WL 953432, at *13; *see also Princz*, 26 F.3d at 1172  (stating that a direct effect "is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption") (internal quotation marks omitted).

Second, as the Court has explained, the two payments that defendants allegedly made to Odhiambo while he was in this country do not alter the jurisdiction analysis under the commercial activity exception.  *See* discussion *supra* pp. 5–7 (explaining that the payments were made in Kenya, in Kenyan shillings, and to a Kenyan whom Odhiambo identifies as his "intermediary").

Third, Odhiambo's allegation about providing the information to the Kenyan Prime Minister's Chief of Staff in Maryland in June 2008 does not provide grounds for jurisdiction because that supply of information does not form the basis of his contract claim.  All three clauses of the commercial activity exception require that Odhiambo's action be "based upon" the acts or activities described, and the phrase "based upon" is "read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia*, 507 U.S. at 357.

To prove breach of contract, a plaintiff must show "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Here, Odhiambo's breach of contract claim is based on the contract allegedly created by Odhiambo's acceptance of the KRA's reward offer.  Proposed 2d Am. Compl. ¶ 80.  His provision of documents and summaries to non-KRA Kenyan officials in Maryland in 2008 is not relevant to the determination of whether there was a valid contract between Odhiambo and the KRA, whether an obligation or duty arose from that contract, whether the KRA breached that

17

duty, or the calculation of the damages from the alleged breach.   Odhiambo asserts in his proposed second amended complaint that his "supply of the same [tax] information in Maryland to Defendants in June 2008 constituted continued performance by Plaintiff in the United States" and is therefore relevant to his contract claim.   Proposed 2d Am. Compl. ¶ 67.   But this assertion is contradicted by other allegations in the proposed second amended complaint.   In the new complaint, Odhiambo explains that he performed his duty under the KRA contract in 2004, and he provided the tax information to the Prime Minister's chief of staff in 2008 as part of his attempts to obtain the reward that was allegedly owed based on that prior performance.   *Id.* ¶¶ 18, 64.   Since the provision of the documents in 2008 was not part of Odhiambo's response to the KRA reward offer it does not constitute "continued performance" of his obligations under the reward contract and does not form the basis of this contract claim.[8]

Fourth, Odhiambo alleges that defendants breached the reward contract by failing to identify or recover unpaid taxes from the Charterhouse accounts that Odhiambo identified, including with respect to taxes evaded through transfers by Charterhouse to banks in the United States.   *Id.* ¶ 88.   This allegation does not suffice for clauses one or two because defendants' alleged failure to identify or recover taxes occurred in Kenya and was not carried out in the United States.   Similarly, to the extent that Odhiambo attempts to allege that defendants' failure to identify or recover unpaid taxes had a "direct effect" in the United States – within the meaning of clause three – because of his relocation, the Court has already rejected this argument.   *See Odhiambo*, 2013 WL 953432, at *12–14.   Finally, Odhiambo's assertion that some of the taxes

---

8       The Court also notes that Odhiambo's allegations that the reward offer advertisements were accessible in the United States are not "fact[s] without which the plaintiff will lose" his breach of contract case.   *Kirkham*, 429 F.3d at 292.   Therefore, his contract claim is not "based upon" those allegations, and they do not provide grounds for jurisdiction under the commercial activity exception.

were evaded through transfers by Charterhouse to banks in the United States does not alter the commercial activity exception analysis because, as the Court previously held, Odhiambo's suit is not "based upon" that activity, and that activity does not constitute a direct effect of defendants' contractual breach in the United States.  *See id.* at *9, 14.  Therefore, Odhiambo's revised breach of contract claim still fails to overcome defendants' sovereign immunity defense.

ii. Counts II–IV, IX:  Accounting, specific performance, quantum meruit, and negligent infliction of emotional distress

The Court's analysis of Odhiambo's breach of contract claim also applies to Counts II, III, IV, and IX because they all seek recovery based on defendants' alleged failure to perform their duties under the reward contract.  *See* Proposed 2d Am. Compl. ¶¶ 97–98 (seeking "an accounting by Defendants to detail and . . . identify monies owed by Defendants to Plaintiff" under the contract);[9] *id.* ¶ 104 (seeking "specific performance by Defendants of the parties' contract"); *id.* ¶ 109 (asserting that "Plaintiff is entitled to receive the fair value of his services to Defendants and to recover losses suffered and money expended in reliance on his contract with Defendants under principles of quantum meruit"); *id.* ¶¶ 144–50 (alleging that defendants' failure to keep his identity confidential as required by the contract caused him to suffer "mental pain and suffering, including depression, and other injuries").  Even if the emotional distress tort claim is viewed as different in nature from the contract claims, the revelation took place in Kenya and as previously indicated in the Court's March 2013 Memorandum Opinion, the facts associated with those allegations do not fulfill an exception to the FSIA.

---

9       "An accounting is a detailed statement of debits and credits between parties arising out of a contract or a fiduciary relation.  Such relief may be obtained *at the close of a litigation* as long as the plaintiff is able to show that that the remedy at law is inadequate."  *Armenian Assembly of Am., Inc. v. Cafesjian*, 692 F. Supp. 2d 20, 48 (D.D.C. 2010) (alterations omitted) (internal quotation marks and citations omitted).  "[A]n accounting is 'an extraordinary remedy' that is only appropriate, if at all, after liability has been determined."  *Id.*  Since the Court does not have jurisdiction to determine liability in this case, it must also dismiss Odhiambo's claim for an accounting on that ground.

### iii.   Count V:  Detrimental reliance/promissory estoppel

Count V attempts to articulate a claim for detrimental reliance/promissory estoppel.  Pl.'s Mot. for Leave to File 2d Am. Compl. at 4.  "Liability on the theory of promissory estoppel requires 'evidence of a promise, the promise must reasonably induce reliance upon it, and the promise must be relied upon to the detriment of the promisee.'"  *Wallace v. Eckert, Seamans, Cherin & Mellott, LLC*, 57 A.3d 943, 958 (D.C. 2012), quoting *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994).  The Court's jurisdictional analysis of Count I also applies to this claim to the extent that it relies on defendants' alleged breach of the reward offer.  *See* Proposed 2d Am. Compl. ¶¶ 110–17, 120–23.

In addition to his allegations about his reliance on the reward offer, Odhiambo's detrimental reliance claim asserts:  "Defendants' later request, in June 2008, by the [Kenyan] Prime Minister, for the facts and circumstances surrounding Plaintiff's unpaid information rewards, to be supplied by Plaintiff in the United States, constituted a specific promise upon which Plaintiff reasonably and detrimentally relied."  Proposed 2d Am. Compl. ¶ 118.  In evaluating a motion to dismiss under Rule 12(b)(1), the Court must grant "plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  But the Court need not accept legal conclusions or inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Here, the proposed second amended complaint does not allege any facts to support Odhiambo's claim that a request for information made by the Kenyan Prime Minister constituted a "specific promise" upon which he reasonably relied.  Odhiambo does not allege that any promises were made during his interactions with the Prime Minister and his subordinate in June

20

2008.  *See* Proposed 2d Am. Compl. ¶¶ 62–66.  His only factual allegation is that in September 2009, the Prime Minister allegedly "promised to find out why KRA had not made an accounting and payments owed, and assured Plaintiff that 'if our [Kenyan] laws say that you are entitled to this money, then I think you should be paid.'"  Proposed 2d Am. Compl. ¶ 69 (alterations in original).  Even giving Odhiambo the benefit of all reasonable inferences, these statements do not state a claim that the Prime Minister promised to pay Odhiambo.  At most, they indicated that the Prime Minister agreed to look into Odhiambo's case and expressed a personal belief that Odhiambo should receive what was owed to him under Kenyan law based on the earlier promise in the reward offer.  Since Odhiambo has failed to allege that the Prime Minister promised to pay him a reward, his motion for leave to amend to add a promissory estoppel claim fails on futility grounds.[10]

### iv.  Count VI: Unjust enrichment

A party asserting an unjust enrichment claim must demonstrate that:  "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust."  *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).  The Court's Count I analysis also applies to

---

[10]    Although the Court is bound to accept Odhiambo's allegations in the proposed second amended complaint as true, it cannot help but observe that several of those allegations directly contradict statements in the first amended complaint that the Court was bound to accept as true. *Compare* Proposed 2d Am. Compl. ¶ 63 (alleging that in June 2008, "[t]he Prime Minister was able to meet with Plaintiff only briefly due to a change in schedule") *with* Am. Compl. ¶ 35 (alleging that in June 2008, the Prime Minister "was *not* able to meet with Mr. Odhiambo because of a change of schedule") (emphasis added); *compare* Proposed 2d Am. Compl. ¶ 66 (alleging that Odhiambo refused to provide the Prime Minister's Chief of Staff with a sworn affidavit regarding the information he provided to the KRA about Charterhouse) *with* Am. Compl. ¶ 37 (alleging that "Odhiambo sent a sworn statement to Kenya" as the Prime Minister's Chief of Staff requested).  These contradictions are concerning because Odhiambo relies on these interactions as a basis for the jurisdiction of this Court, but he fails to acknowledge or explain the contradictory allegations in his pleadings.

Odhiambo's unjust enrichment claim to the extent it relies on defendants' alleged breach of the reward contract.  *See* Proposed 2d Am. Compl. ¶¶ 124–128, 130.

In addition to the facts alleged in his breach of contract claim, Odhiambo attempts to bolster his unjust enrichment claim with the allegation that in a July 18, 2007 meeting in Nairobi, the KRA falsely informed Mr. Weru that Nakumatt Holdings – an operator of supermarkets and convenience stores throughout Kenya – paid over 20 million Kenyan shillings in overdue taxes. *Id.* ¶¶ 60, 129.  Mr. Weru conveyed this information to Odhiambo on the same day.  *Id.* ¶ 60. According to Odhiambo, this information was false because in September of 2011, a U.S. State Department cable revealed that Nakumatt Holdings had settled tax evasion charges in Kenya by paying 475 million Kenyan shillings.  *Id.* ¶ 76.  Odhiambo alleges that he was the one who provided the information about Nakumatt Holdings' evasion of taxes to the KRA so he would be entitled to a reward based on the larger figure.  *Id.* ¶¶ 19–20, 76–78, 129.

But this new claim does not meet clauses one or two of the commercial activity exception:  Odhiambo's provision of the tax evasion information about Nakumatt Holdings, the settlement of the Nakumatt Holdings tax case, and the KRA's communications with Mr. Weru all occurred in Kenya.  Mr. Weru's transmittal of the allegedly false information to Odhiambo in the United States does not change the analysis because Mr. Weru was not an agent of the KRA. *See* discussion *supra* pp. 6–7.  Further, the allegation does not meet the requirements of clause three because Odhiambo has not alleged any direct effect or "immediate consequence" arising out of his receipt of allegedly false information in the United States.  *See Odhiambo*, 2013 WL 953432, at *14 n.9 ("Odhiambo's presence in the U.S. is also insufficient to show that the alleged failure to pay the reward had a 'direct effect' here.").

v.  Count VII:  Fraud

Count VII alleges that "Plaintiff has been led by Defendants' guile, surreptitiousness and deceit to enter into an agreement with Defendants for tax payment whistle-blowing services, to Plaintiff's detriment."  Proposed 2d Am. Compl. ¶ 132.  To state a claim for fraud, a plaintiff must demonstrate:  "'(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.'"  *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1134 n.7 (D.C. 2012), quoting *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977).  Odhiambo asserts that the KRA's advertisement for the reward scheme was false and misleading because it failed to disclose that the reward that a person could obtain based on the unpaid taxes recovered was limited to a maximum of 2.1 million Kenyan shillings.  Proposed 2d Am. Compl. ¶¶ 134–35.  This allegedly false representation does not bring the fraud claim within the purview of the commercial activity exception.  It does not fall within clauses one or two because it occurred in a Kenyan advertisement, in Kenyan newspapers, and on a Kenyan government website.  And as the Court has already stated, the fact that the advertisement was accessible from the United States does not change the jurisdictional analysis under clauses one and two nor does it constitute a "direct effect" under clause three.  *See* discussion *supra* pp. 15–17.

Odhiambo also points to eleven acts taken by defendants that he alleges demonstrate that defendants never intended to pay him the reward as advertised.  Proposed 2d Am. Compl. ¶¶ 137(a)–(k).  Only the first five of these acts could arguably constitute misrepresentations.  *See id.* ¶¶ 137(a)–(e) (alleging that defendants falsely assured Odhiambo that they would keep his identity as a whistleblower confidential and guarantee his safety, alleging that defendants falsely denied Odhiambo's role in providing the tax information about Charterhouse, and alleging that defendants provided false information about the taxes recovered from Nakumatt Holdings).  All

of these alleged misrepresentations took place in Kenya, and thus do not fall within clauses one or two.  And Odhiambo has not pled an "immediate consequence" of those actions in the United States as required by clause three.  *See Odhiambo*, 2013 WL 953432, at \*12–13, 14 n.9 (explaining that Odhiambo's relocation to the United States was not a "direct effect" of defendants' failure to keep his identity confidential and that Odhiambo's presence in the United States is insufficient to show that the alleged failure to pay the reward had a "direct effect" here).

### vi.  Count VII:  Constructive Fraud

Odhiambo's constructive fraud claim is also based upon defendants' allegedly false statements about the amount of taxes recovered from Nakumatt Holdings.  As the Court stated in its discussion of the unjust enrichment claim, this allegation does not fall within the commercial activity exception.  *See* discussion *supra* pp. 21–22.

Therefore, the Court will deny Odhiambo's Rule 15(a)(2) motion for leave to file a second amended complaint because Odhiambo has not met the requirements of Rule 59(e) for setting aside the March 2013 decision, and his proposed amendments are futile.

### CONCLUSION

Accordingly, the Court will deny Odhiambo's Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) [Dkt. # 22] and his Motion for Leave to File a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) [Dkt. # 30].  A separate order will issue.

_____
AMY BERMAN JACKSON
United States District Judge

DATE: May 30, 2013